UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ISAAC FELTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:20-cv-01253-JPH-DLP |
| ) | |
| COMMISSIONER OF THE INDIANA ) | |
| DEPARTMENT OF CORRECTION in his official ) | |
| capacity, ) | |
| ) | |
| Defendant. ) | |

**Order Granting Plaintiff's Motion for Preliminary Injunction**

### I. Introduction

Indiana Department of Correction (IDOC) inmate Isaac Felton contends that the IDOC has violated his rights to freely exercise his Druid faith. Druidism is not formally recognized as a distinct religion by the IDOC. Dkt. 13-2 at ¶¶ 3, 10; dkt. 13-1 at § XIII.A. There are no group (communal) Druid services in the IDOC, so Mr. Felton has attended the Wiccan services. Dkt. 13-2 at ¶ 17. But Druidism and Wicca are not the same religion and have separate tenets and rituals. *Id.* at ¶ 11. Mr. Felton argues that the IDOC's conduct violates the First Amendment right to freely exercise his religion and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc, *et seq.* (RLUIPA). *See id.* at 12. Mr. Felton seeks a preliminary injunction to require the IDOC to (a) recognize Druidism as a separate and distinct religion, and to (b) permit Druids the same opportunities for communal worship that are afforded to other religions. Dkt. 13 at 24.

The defendant, the Commissioner of the IDOC, is sued in his official capacity. He argues that Mr. Felton is not entitled to relief because has not been prohibited from "read[ing] extensively

about Druidism" and regularly communicating with Reverend Kirck Thomas, a former Archdruid of Ár nDraíocht Féin (ADF), also known as "A Druid Fellowship," about his faith, study, and spiritual growth. The Commissioner further argues that there is not sufficient interest among other offenders in Mr. Felton's correctional facility for a separate Druid religious service. *See* dkt. 15. Therefore, as the Commissioner sees it, Mr. Felton has not shown a likelihood of success on his claims that the IDOC has violated RLUIPA and infringed upon his First Amendment rights. *See id.* at 5.

## II. Preliminary Injunction Legal Standard

"A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. Centimark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). "To survive the threshold phase, a party seeking a preliminary injunction must satisfy three requirements." *Valencia v. City of Springfield*, 883 F.3d 959, 966 (7th Cir. 2018) (internal quotations omitted)). The party must show that: (1) "absent a preliminary injunction, it will suffer irreparable harm in the interim period prior to final resolution of its claims"; (2) "traditional legal remedies would be inadequate"; and (3) "its claim has some likelihood of succeeding on the merits." *Id*. Only if the moving party meets these threshold requirements does the court then proceeds to conduct a balancing test. *Id.* In this balancing test, "the court weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *Id*.

### III. Discussion

RLUIPA provides, in pertinent part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest

42 U.S.C. § 2000cc-1(a). Because RLUIPA is dispositive at this preliminary-injunction stage, the Court does not address Mr. Felton's First Amendment arguments. *See Holt*, 574 U.S. at 361–62.

#### A.   Irreparable Harm

The Commissioner argues that Mr. Felton has not suffered irreparable harm because all communal worship services in the IDOC have been suspended due to the COVID pandemic. Dkt. 15 at 9. Mr. Felton acknowledges that communal worship has been suspended. The parties agree that communal worship will resume at some point, but neither party has informed the Court when that is expected. Because the suspension of communal worship is only temporary and because Mr. Felton seeks equal treatment with other religions once services resume, this argument does not affect the irreparable harm analysis.

Mr. Felton argues that restrictions on religious exercise "are presumed to constitute irreparable injuries." Dkt. 13 at 21. The Commissioner responds that Mr. Felton cannot show irreparable harm because he has been able to self-explore and practice Druidism by reading about it and communicate with a Druid priest.

The Court finds that the IDOC's restrictions infringe on and substantially burden Mr. Felton's religious exercise rights protected by RLUIPA resulting in irreparable harm for which

3

there is no adequate remedy at law. *See Knowles v. Pfister*, 829 F.3d 516, 518–19 (7th Cir. 2016) (ordering a preliminary injunction under RLUIPA allowing a Wiccan inmate to wear a small medallion).

### B.     Traditional Legal Remedies

For the same reasons that the IDOC's restrictions cause Mr. Felton irreparable harm for which there is no adequate remedy at law, traditional legal remedies are insufficient to compensate Mr. Felton. Mr. Felton seeks the ability to engage in communal worship service for which monetary damages are not a sufficient substitute.

### C.     Likelihood of Success on the Merits

It is undisputed that the IDOC allows communal worship services for several religions but not for followers of Druidism. Dkt. 13-2; dkt. 12-15; dkt. 15. The Commissioner argues that there has been no substantial burden to his rights under RLUIPA because Mr. Felton has been able to study his religion and communicate with a Druid priest. Mr. Felton argues and provides evidence that communal worship and religious study are vitally important tenets to Druidism. Dkts. 13-2, 13-3. The Commissioner does not offer any evidence that the IDOC is unable to provide communal worship for Druids nor does he dispute that communal worship is a central tenet of Druidism. Instead, he contends that there is insufficient interest from other inmates at the New Castle Correctional Facility to hold communal worship services or religious study. Dkt. 15

The Commissioner has not argued any compelling governmental interest, so the only question under RLUIPA is whether the denial of communal worship and study imposes a substantial burden on Mr. Felton's religious exercise. *See Knowles*, 829 F.3d at 518–19. "Religious exercise" is defined as "any exercise of religion, whether or not compelled by, or central to, a

4

system of religious belief." 42 U.S.C. § 2000cc-5(7)(B). This definition provides "expansive protection for religious liberty." *Holt v. Hobbs*, 574 U.S. 352, 358 (2015).

*Holt* forecloses the Commissioner's argument that Mr. Felton can adequately practice his religion with self-study and corresponding with a Druid priest. In *Holt*, a Muslim inmate asked permission to grow a beard that he asserted was required by his faith. *Id.* at 358. Applying its policy against inmate facial hair, the Arkansas Department of Correction (ADC) refused Holt's request. *Id.* at 359. In defending its policy in a RLUIPA action, the ADC argued it had not substantially burdened Holt's practice of his religion because it had allowed him a prayer rug, a religious diet, and let him observe religious holidays. *Id.* at 360. The Court rejected the ADC's argument, holding that whether other forms of religious practice have been provided is not relevant to the "substantially burdened" test under RLUIPA. *Id.* at 361-62.

The Commissioner next argues that Mr. Felton does not need communal services because there is not enough interest for such services among the inmate population.  But the IDOC has made no evidentiary showing that this is true, or that no other inmates would attend if such services if offered.  Moreover, Mr. Felton has designated evidence that he previously was in a group with other Druids, thus demonstrating that there likely are other inmates who practice Druidism and who would likely attend communal services if offered. Dkt. 13-2 at 1–2 (Felton Aff.) ("I began regularly . . . practicing Druidry with other Druid inmates [in 2015].")

Under *Holt*, Mr. Felton has shown a likelihood of success on his RLUIPA claim. *See also Jones v. Carter*, 915 F.3d 1147, 1149 (7th Cir. 2019) (holding that *Holt* put to rest any confusion about what constitutes a substantial burden under RLUIPA).

### D.     Balancing Test

The next question is whether the irreparable harm that Mr. Felton would endure without the protection of the preliminary injunction is greater than any irreparable harm the Commissioner would suffer if preliminary injunctive relief is granted. *Valencia*, 883 F.3d at 966. The Commissioner has not articulated harm the IDOC would suffer should the preliminary injunction issue, so the Court need not consider whether other forms of religious practice have been provided. Corporate, or communal, worship services and religious study are provided for other inmates, and the Commissioner's reason for denying Mr. Felton the opportunity for corporate worship is that he does not know of other inmates wanting such services. Dkt. 15 at 4; dkt. 15-1 at ¶ 9 (declaration of IDOC Director of Religious Services David Liebel).

The Commissioner has not demonstrated harm that would occur if two or more inmates are allowed opportunities to engage in communal worship or religious study. The harm to Mr. Felton, as discussed in section III.A., is presumed to be an irreparable injury. Therefore, this final balancing test clearly favors Mr. Felton.

### IV.  Conclusion

Having shown the requirements for the issuance of a preliminary injunction are met, the Court **grants** Mr. Felton's motion for a preliminary injunction, dkt. [11]. The **parties are directed** to confer and present an agreed proposed preliminary injunction to the Court **within fourteen days** of this Order. If agreement cannot be reached as to the terms of a preliminary injunction, each party shall submit their proposed preliminary injunctions by the same date.

**SO ORDERED.**

Date: 3/22/2021

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Thomas Joseph Flynn
Indiana Attorney General
tom.flynn@atg.in.gov

Gavin Minor Rose
ACLU of Indiana
grose@aclu-in.org

7